Proceed accordingly.

(92 Misc. Rep. 677)

### In re MITCHELL et al.

### In re ORR'S ESTATE.

(Surrogate's Court, Kings County. December, 1915.)

1. TRUSTS &=>284—CONSTRUCTION—RIGHTS OF BENEFICIARY.

Where decedent wrote to his daughter that, as he had given another daughter a house and desired to place both on the same footing, he had invested a certain sum with his other funds, the income to be paid to her, and where throughout his remaining life, with slight exception, he paid to her the interest on such sum, it was the duty of his executors to pay over to her the principal of the trust fund only when she should actually and in good faith prepare for the building or purchase of a house.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 405; Dec. Dig. &=>284.]

2. TRUSTS &=>284—CLAIM AGAINST ESTATES.

A claim made against an estate by the beneficiary of a sum given in trust, to be paid to her when she shall have prepared, in good faith, for the building or purchase of a house, should be disallowed, where such claim is for a sum of money as a debt of the decedent due in his lifetime, or as one becoming due on his death, and it appears that she has not prepared to build or purchase a house.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 405; Dec. Dig. &=>284.]

In the matter of the petition of James L. Mitchell and others to render and settle their account as executors of Alexander Ector Orr, deceased. Decreed according to opinion.

Paul G. Gravenhorst, of New York City, for executors.
Benedict S. Wise, of New York City, for claimant.
John F. Burke, of New York City, special guardian.

KETCHAM, S. [1] A daughter of the decedent makes claim against his estate for $18,000, upon the following facts: In 1895, her father having given, or engaged to give, to another daughter $18,000, to be used by her in building a house then in progress, wrote to the daughter who is the present claimant in part as follows:

"As you are not yet certain about buying a house I propose until you do to pay the interest on the same sum that I am giving Juliet at 4½ per cent. which is the rate that the money is invested at beginning the 1st of June. * * * My wish is that you and Juliet should be treated alike from the financial point of view, and whenever you and Mr. Nies (the claimant's husband) are ready to purchase a house I will be ready to turn over the fund I have set apart for that purpose."

Later in the same year he wrote to the claimant:

"My purpose was to put you and Juliet upon the same footing, and as I have given her a house which would cost me a certain sum as of the 1st of August, 1895, I proposed to allow you interest on that amount from that date."

In 1909 he wrote:

"The $18,000 you speak of is invested with my other funds. The income from it and that from you grandfather's estate helps to make up the yearly amount I deposit for you."

From the time of the first letter, and throughout his remaining life, the father paid to the claimant interest on $18,000 at the rate of 4½ per cent., with an exception about to be stated. In 1896 the claimant received from him $1,500, which she shortly restored. During the time between the receipt and the reservation of the last-named sum, the father's payment of interest was calculated only upon $16,500. The claim is entirely limited to the allegation that the decedent gave to the claimant the sum of $18,000, which, however, he retained in his possession. There is no evidence to sustain the theory of gift. It must result that there was a declaration by the father that he held the $18,000 in trust for the claimant, abating for the moment the consideration of the precise terms and nature of the trust.

To the validity of this trust no act beyond the declaration was necessary. It was at least a trust to pay the interest. It was at least a trust under which, in the event that the daughter should acquire a house in the lifetime of the father, there would become due to her from him the sum of $18,000. This was not only his affectionate purpose; it was the enforceable duty to which he had submitted himself.

[2] It remains only to determine whether the trust, in its founder's contemplation, involved an unqualified obligation to pay to the daughter at any time the sum of the trust fund or the self-imposed duty to make the payment only in case of her readiness and preparation to acquire a house. To support any present claim it would be necessary to find that the obligation of the trustee was one which was either broken by him in his lifetime or was of such nature that it matured immediately upon his death. Neither finding is permitted by the facts. Whatever was his duty while he lived is impressed upon his estate, and his representatives take no duty which did not rest upon him.

He undertook only to pay the principal of the trust fund when the beneficiary thereof should actually and in good faith prepare for the building or purchase of a house for herself and her husband. This duty descends upon his executors. They must fulfill the purpose of their decedent, but they must be no less careful to observe the limitations with which he hedged his trust than they should be to regard his affirmative obligation. The claim to a sum of money as a debt of the decedent, due in his lifetime, or as one becoming due upon his death, is disallowed.

Decreed accordingly.